## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**ENBRIDGE PIPELINES (ILLINOIS) LLC,**

     **Plaintiff,**

**v.**

**JOSEPH E. BURRIS and**
**SALLIE J. BURRIS, et al.,**          **Case No. 08-cv-697-DRH**

     **Defendants.**          **(Consolidated Case: 08-cv-842)**

## MEMORANDUM & ORDER

**HERNDON, Chief Judge:**

### I. Introduction

Before the Court is plaintiff Enbridge Pipelines (Illinois), LLC's ("Enbridge") Motion for Summary Judgment (Doc. 41) against defendants Theodore L. Hortenstine, Annetta M. Hortenstine, Andrea M. Workman, Richard C. Hortenstine, Andrew J. Hortenstine and Jennifer A. Grohler ("Defendants" or "Hortenstine defendants"). Defendants have filed an opposing Response (Doc. 46), to which Plaintiff has filed its Reply (Doc. 54). In further support of its motion, Plaintiff was granted leave to file/cite additional authority (*see* Doc. 56) for the Court's consideration.

In its April 30, 2009 order (Doc. 34), the Court granted in part

Defendants' Motion to Consolidate Cases (Doc. 17), whereby the following two cases, *Enbridge v. Portz*, No. 08-cv-841-DRH-DGW and *Enbridge v. Hortenstein*, No. 08-cv-842-DRH-PMF, were consolidated into *Enbridge v. Burris*, No. 08-cv-697-DRH-CJP, (with *Burris* becoming the lead case).  The Court found all three cases involved the requisite "common question of law or fact" to warrant consolidation.[1]  The Court additionally ordered that all filings were to thereafter be made in *Enbridge v. Burris*, No. 08-cv-697-DRH-CJP.  As such, Plaintiff has filed three separate motions for summary judgment against the three separate sets of Defendants.  This Order involves only Plaintiff's arguments regarding its complaint for declaratory judgment against the Hortenstine defendants, as originally filed in *Enbridge v. Hortenstine*, No. 08-cv-842-DRH, prior to the consolidation of the three aforementioned cases.

Plaintiff has brought a declaratory judgment action (Case No. 08-cv-842-DRH, Doc. 2) against the Hortenstine defendants on the basis of diversity jurisdiction.  **28 U.S.C. § 1332**.  In particular, Plaintiff seeks a declaration that a certain pipeline rights-of-way ("easements") are valid and enforceable according to their terms.  Defendants contest the current validity of the easements, arguing, among other things, abandonment and expiration.

---

[1]  Specifically, Defendants asserted that these "non-consolidated cases are merely part of a larger effort by Plaintiff to secure property rights for its single multi-district pipeline project" (Doc. 17, ¶¶ 2 & 9).

## II. <u>Background</u>

This matter centers around right-of-way easements running across two separate tracts of land (Tracts 12-003 and 12-004) currently owned by Defendants (Doc. 42, ¶ 3; Doc. 46, ¶ 3).  The easements were originally recorded with the Fayette County Recorder on August 9, 1939, reflecting the right-of-way granted by the title holders (who preceded Defendants in title) to The Texas-Empire Pipe Line Company (Doc. 42, ¶ 4, Ex. 1 - Affidavit of Norm Henenberg, ¶¶ 5-7 & Exs. A & B; *see also* Case No. 08-cv-842, Doc. 2 - Comp., Group Ex. A).  The easements (hereinafter "the Hortenstine easements") granted and conveyed "the right to lay, operate and maintain a pipe line for the transportation of oil, gas, gasoline and/or other fluids," as well as "the right to lay, operate and maintain, adjacent to and parallel with the first, a second pipe line . . ." (*Id.*).  The Hortenstine easements also granted certain ingress/egress and maintenance rights (*Id.*).  Further, the Hortenstine easements were to pass to the grantee's "successors and assigns so long as such pipe lines or other structures are maintained . . ." (*Id.*).

Plaintiff has submitted various documents to establish its claim of ownership over the Hortenstine easements.  First is a certified copy of an Assignment, executed on September 22, 1983 and recorded with the Fayette County Recorder, from Texaco-Cities Service Pipe Line Company (which indicates it was formerly known as The Texas-Empire Pipe Line Company) to Williams Pipe Line Company, assigning the former's interests in the Hortenstine easements (Doc. 42, ¶ 7, citing Ex. 1 - Henenberg Aff., ¶ 8, Ex. C).  Second is a certified copy of an

Assignment of Easement, executed on June 23, 2004 and also recorded with the Fayette County Recorder, from Magellan Pipeline Company, LLC (indicating it was formerly known as Williams Pipe Line Company, LLC and Williams Pipe Line Company) to Central Illinois Pipeline Company, LLC, again assigning the former's interests in the Hortenstine easements (*Id*. at ¶ 8, citing Henenberg Aff., ¶ 9, Ex. D). The assignee, Central Illinois Pipeline Company, LLC, thereafter merged into Enbridge, with Enbridge as the surviving entity (*Id*. at ¶ 9, citing Henenberg Aff., ¶ 10, Ex. E).  Plaintiff has also submitted authentic copies of the Certificates of Merger, filed on December 15, 2006 with the Secretaries of State of Delaware and Oklahoma, to substantiate its assertion that it owns the Hortenstine easements, as the current successor-in-interest to the original grantee (*Id*. at ¶¶ 9 - 10, citing Henenberg Aff., ¶¶ 10-11).

At present, Plaintiff is engaged in what it describes as "a multimillion dollar pipeline project that will cross portions of Central and Southern Illinois" (*Id*. at ¶ 2, citing Henenberg Aff., ¶ 1).  Plaintiff intends to incorporate portions of an existing pipeline right-of-way acquired as part of its merger with the former Central Illinois Pipeline Company, which includes the two tracks of land now owned by Defendants (*Id*. at ¶¶ 2-3).  The matter is ultimately before the Court because Defendants have contested Plaintiff's assertion of rights granted by the Hortenstine easements.

### III.  Subject Matter Jurisdiction

As an initial inquiry, the Court must resolve the issue of whether it has proper subject matter jurisdiction over Plaintiff's suit before it proceeds to the merits.  Defendant opposes Plaintiff's assertion that diversity jurisdiction exists under **28 U.S.C. § 1332**.  Section 1332 requires that the parties be completely diverse and the matter in controversy exceed $75,000, exclusive of interest and costs. ***LM Ins. Corp. v. Spaulding Enterprises Inc.*, 533 F.3d 542, 547 (7th Cir. 2008)**.  Defendant concedes that there is proper diversity of citizenship between Parties, but contests that the amount in controversy exceeds $75,000 (Doc. 45, pp. 2 & 4).

"Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." ***Ex parte McCardle*, 7 Wall. 506, 514 19 L. Ed. 264 (1868); *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 94 (1998)**.  When challenged, the party invoking federal jurisdiction bears the burden of demonstrating that the jurisdictional requirements have been met.  ***Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997)**.  As the Seventh Circuit clarified in ***Meridian Security Insurance Co. v. Sadowski***, if the material allegations regarding the amount in controversy are contested, the party seeking federal forum must prove the relevant jurisdictional facts "by a preponderance of the evidence."

If that party is thereafter able to establish the jurisdictional facts, dismissal (or remand) upon the basis of lack of subject matter jurisdiction is appropriate only if the district court finds it "legally certain" that either "the recovery (from plaintiff's perspective) or cost of complying with the judgment (from defendant's) will be less than the jurisdictional floor . . . ." **LM Ins. Corp. v. Spaulding Enter., Inc., 533 F.3d 542, 547 (7th Cir. 2008) (quoting _Meridian Security_, 441 F.3d 536, 543 (7th Cir. 2006))**.

Here, Defendants believe Plaintiff's conclusory allegation that "the pecuniary result of the declaratory judgment . . . exceeds the sum or value of $75,000.00" is inadequate to establish the amount in controversy (Doc. 46, pp. 2 & 4). Moreover, Defendants argue that the portion of the Henenberg Affidavit (Doc. 42, ¶ 1, Ex. 1 - Henenberg Aff., ¶ 2), cited by Plaintiff in support of its assertion that the amount in controversy has been met, is also wholly conclusory and merely parrots Plaintiff's allegation. Instead, Defendants point out the fact that the Hortenstine easements are only of nominal value (the grant of the easements were each conveyed for $80.00 back in 1939, _see_ Doc. 42, Ex. 1- Henenberg Aff., Ex. A). Aside from the insignificant face value of the Hortenstine easements, Defendants oppose the notion that Plaintiff sets forth any further allegations establishing that the amount in controversy exceeds the jurisdictional amount.

As the proponent of federal jurisdiction, it is now Plaintiff's burden to show by a preponderance of the evidence that the amount in controversy likely

exceeds the jurisdictional threshold amount of $75,000. Plaintiff addresses this issue in its Reply (Doc. 54, p. 5, n.3). In support of its assertion that the amount in controversy exceeds $75,000 should the Hortenstine easements be declared invalid, Plaintiff submits an excerpt from the deposition of Norm Henenberg, in which he explains that if the various pipeline easement(s) cannot be used, Plaintiff will need to find a new way around each tract of land, thereby incurring additional costs to acquire land for the new pipeline route. Henenberg opines that this effort will also incorporate further costs for additional materials, construction engineering work, as well project delay costs (Doc. 54, p. 5, n.3, Ex. 2). Specifically, Henenberg claims that the additional pipe needed, if a longer route is required to go around Defendants' tracts of land, costs approximately $100 to $200 per foot. Because an alternate path is yet unknown (as additional easements have not been acquired because Plaintiff believes it maintains the right to use the Hortenstine easements), Plaintiff has no way of specifically calculating the length of additional pipeline needed or the corresponding costs for the additional materials, construction and engineering. However, Henenberg opined that the costs would likely exceed $75,000 (*Id.*).

Under the standard set forth by the Seventh Circuit in ***Meridian Security***, the Court finds Plaintiff has established the facts regarding the amount in controversy by a preponderance of the evidence. Defendants offer no argument or evidence to show otherwise. Therefore, because the Court cannot determine with legal certainty that Plaintiff's pecuniary damages incurred would *not* exceed $75,000

Page 7 of 24

if the Court declares the Hortenstine easements invalid, it finds diversity jurisdiction exists.   As such, the Court can now address the merits of Plaintiff's summary judgment motion.

### IV. <u>Discussion</u>

**A.    Summary Judgment**

Summary judgment is proper where the pleadings and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **FED. R. CIV. P. 56(c);** *Oats v. Discovery Zone*, **116 F.3d 1161, 1165 (7th Cir. 1997) (citing** *Celotex Corp. v. Catrett*, **477 U.S. 317, 322 (1986))**.   The movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law.   *Santaella v. Metro. Life Ins. Co.*, **123 F.3d 456, 461 (7th Cir. 1997) (citing** *Celotex*, **477 U.S. at 323)**.   This Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant.   *Regensburger v. China Adoption Consultants, Ltd.*, **138 F.3d 1201, 1205 (7th Cir. 1998) (citing** *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 255 (1986));** *see also Smith v. Hope School*, **560 F.3d 694, (7th Cir. 2009) ("[W]e are not required to draw every conceivable inference from the record . . . we draw only reasonable inferences.") (citations omitted)**.   Summary judgment is also appropriate if a plaintiff cannot make a showing of an essential element of his claim.   *Celotex*, **477 U.S. at 322**.   While the Court may not "weigh evidence or engage in fact-finding" it

must determine if a genuine issue remains for trial.  **See Lewis v. City of Chicago, 496 F.3d 645, 651 (7th Cir. 2007)**.

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial.  **Walker v. Shansky, 28 F.3d 666, 670-71 (7th Cir. 1994), aff'd, 51 F.3d 276 (citing Celotex, 477 U.S. at 324)**.  No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted."  **Anderson, 477 U.S. at 249-50 (citations omitted); accord Starzenski v. City of Elkhart, 87 F.3d 872, 880 (7th Cir. 1996); Tolle v. Carroll Touch, Inc., 23 F.3d 174, 178 (7th Cir. 1994)**.  In other words, "inferences relying on mere speculation or conjecture will not suffice."  **Trade Fin. Partners, LLC v. AAR Corp., 573 F.3d 401, 407 (7th Cir. 2009) (citation omitted); see also Anderson, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant].")**.  Instead, the non-moving party must present "definite, competent evidence to rebut the [summary judgment] motion."  **EEOC v. Sears, Roebuck & Co., 233 F.3d 432, 437 (7th Cir. 2000) (citation omitted)**.

**B.**    **Chain of Title**

Defendants dispute that Plaintiff has adequately demonstrated proper chain of title to prove that it now holds proper title to the original Hortenstine easements (Doc. 46, pp. 6-8).  Without proper chain of title proving that Plaintiff is the current interest holder of the Hortenstine easements, it does not have standing to bring this declaratory judgment suit against Defendants.  Defendants contend that copies of the recorded documents reflecting the Hortenstine easements and their subsequent assignments, as submitted by Plaintiff (as described *supra* in the Background section of this Order), only establish *partial* chain of title.  What is missing, Defendants explain, is evidence establishing that each of the assignors actually gained the right to assign or convey the easement to the subsequent assignee.  To demonstrate, the records submitted by Plaintiff show the following series of conveyances/assignments regarding each of the Hortenstine easements:

| | | |
|---|---|---|
| **Defendants' Predecessors-in-Title** (original grantors) | → | **The Texas-Empire Pipe Line Co.** (grantee) |
| **Texaco-Cities Service Pipe Line Co.** (assignor) | → | **Williams Pipe Line Co.** (assignee) |
| **Magellan Pipeline Co.** (assignor) | → | **Central Illinois Pipeline Co., LLC** (assignee) |
| **Central Illinois Pipeline Co., LLC** (assignor) | → | **Enbridge** ("Plaintiff") (assignee and current holder of easement) |

Defendants contend that gaps in the chain of title exist, as nothing indicates how Texaco-Cities Service Pipe Line Company acquired the Hortenstine easements from The Texas-Empire Pipe Line Company or, similarly, how Magellan

Pipeline Company acquired the Hortenstine easements from Williams Pipe Line Company.  There are two Assignments of Interest, submitted as evidence by Plaintiff. The first is an assignment of the certain easement interests, including the Hortenstine easements, from Texaco-Cities Service Pipe Line Company to Williams Pipe Line Company, executed on September 22, 1983 (hereinafter, "the 1983 Assignment") (Doc. 42, ¶ 7, citing  Ex. 1 - Henenberg Aff. ¶ 8, Ex. C).  The 1983 Assignment indicates that Texaco-Cities Service Pipe Line Company was "formerly named The Texas-Empire Pipe Line Company" (*Id.*).  The second "Assignment of Easement," assigned certain easements, including the Hortenstine easements, from Magellan Pipeline Company to Central Illinois Pipeline Company, LLC.   This Assignment was executed on June 23, 2004 (hereinafter "the 2004 Assignment") (*Id.* at ¶ 8, citing Ex. 1 - Henenberg Aff. ¶ 9, Ex. D).  The 2004 Assignment indicated that Magellan Pipeline Company was "formerly known as Williams Pipe Line Company, LLC, and Williams Pipe Line Company" (*Id.*).

Defendant further contend that this mere reference to a corporate name change is not enough to establish that either Texaco-Cities Service Pipe Line Company or Magellan Pipeline Company were properly assigned the Hortenstine easements from *their* predecessors.  The same argument regarding chain of title was previously made by the land owners in a case before the District Court for the Central District of Illinois, ***Kelly v. Enbridge (U.S.), Inc.*, No. 07-3245, 2008 WL 2123755 at \*1 (C.D. Ill. May 16, 2008) (Scott, J.)**.  Defendants urge the Court not

to consider the **Kelly** case as controlling over the issues herein (Doc. 45, pp. 13-16). Certainly, the Court does not consider the opinion of its sister court to be controlling precedent.[2]  The evidence in the **Kelly** case is certainly bound to differ somewhat from the evidence in the instant matter.  However, with respect to the chain of title issue, the evidence is substantially the same.

In **Kelly**, Judge Scott held that proper chain of title was established, finding that under FEDERAL RULE OF EVIDENCE 803(15), the 1983 and 2004 Assignments were "substantive evidence of the name changes of the assignors," noting that nothing in the record contradicted any of the assignments of interest. **Kelly**, 2008 WL 2123755 at *7.[3]  FEDERAL RULE OF EVIDENCE 803(15) allows statements in documents which affect an interest in property to be considered as an exception to the hearsay rule with respect to matters relevant to the purpose of the document, "unless dealings with the property since the document was made have been inconsistent with the truth of the statement or the purport of the document."

On March 31, 2010, the Court issued an Order in this case, granting summary judgment in favor of Plaintiff regarding its complaint for declaratory judgment against the Burris defendants (Doc. 58).  The arguments pertaining to the Burris defendants are identical to those made by the Parties herein.  In that Order,

---

[2] Further, the Court would like to clarify that it will never consider an opinion from any district court as "controlling."  It can, however, agree with the district court's rationale and apply the same or similar reasoning in its own analysis.

[3] The 1983 and 2004 Assignments apparently also included the easements at issue in **Kelly**.

the Court found Plaintiff had properly established chain of title as to the easements at issue.  In comparing the case to the ***Kelly*** case, this Court stated:

> Here, as in ***Kelly***, the identi[t]y of the assignor named in both the 1983 and the 2004 Assignment are relevant to the purpose of the Assignment – most plausibly to indicate how each assignor came by the interests it intended to assign.  There have been no instances brought to the Court's attention that any subsequent dealings with the Burris easements (among the asserted easement holders) have been inconsistent with the 1983 and 2004 Assignments, wherein Texaco-Cities Service Pipe Line Company purported to have formerly been named The Texas-Empire Pipe Line Company and Magellan Pipeline Company purported to have formerly been known as Williams Pipe Line Company, LLC, and Williams Pipe Line Company.  Thus, the Court holds that despite Defendants' arguments otherwise, Plaintiff has established proper chain of title to the Burris easements.

(Doc. 58, pp. 13-14.)  Because the same documents pertaining to the 1983 and 2004 Assignments of the Hortenstine easements are the same as those pertaining to the Burris easements, the Court adopts its previous rationale and thus also finds that Plaintiff has established proper chain of title as to the Hortenstine easements.

**C.    Abandonment**

Holding that Plaintiff has established proper chain of title with respect to the Hortenstine easements, the Court will now turn to Defendants' next argument opposing Plaintiff's assertion that the Hortenstine easements remain valid.[4]

---

[4] Regarding the remainder of Defendants' opposing arguments, Plaintiff has contested that Defendants, by failing to enumerate these "affirmative defenses" in their Answer, have waived such arguments under FEDERAL RULE OF CIVIL PROCEDURE 8(c) (Doc. 54, p. 1, citing to its argument in Doc. 52).  While not specifically enumerated under an "Affirmative Defenses" heading in their Answer, the Court observes Defendants did, in fact, contest the validity and enforceability of the Hortenstine easements within their Answer (*see* Case No. 08-cv-842, Doc. 26, ¶¶ 6-7).  As such, Defendants' abandonment and expiration arguments can be properly considered.

Defendants argue that even should Plaintiff establish proper chain of title to the Hortenstine easements, the rights and privileges bestowed on the right-of-way holder are no longer enforceable as a matter of law due to abandonment of the easement (Doc. 46, pp. 8-10).  First, Defendants assert that the pipeline, established via the original grant of easement in 1939, has not been used for many years, but instead, has lain dormant.  While abandonment will result in termination of an easement, a party asserting abandonment must show nonuse of the easement along with an intent to abandon the easement.  **See Diaz v. Home Fed. Sav. and Loan Ass'n of Elgin, 786 N.E.2d 1033, 1043 (Ill. App. Ct. 2002) (citation omitted)**.  In other words, "[a]n easement is [considered] abandoned 'when nonuse is accompanied by acts which manifest an intention to abandon and which destroy either the object for which the easement was established or the means of its enjoyment.' "  **Id. (quoting Schnabel v. County of Du Page, 428 N.E.2d 671, 676 (Ill. App. Ct. 1981))**.

Defendants recognize that the Hortenstine easements were granted to construct the Texas Empire Oil Pipeline, also referred to as the "Luxor Line pipeline" (Doc. 46, p. 9).  Defendants note that it remains undisputed between the Parties that the Luxor Line pipeline is no longer in use, nor has it been in use for many years.  Therefore, Defendants conclude that the requirement of nonuse is well-established and only the requirement of "intent to abandon" remains.  As evidence of the intent to abandon the Hortenstine easements, Defendants offer the affidavit of their expert witness, John Ackerman, P.E. (Doc. 46, Ex. F).  Ackerman first avers that to

maintain a pipeline in useable condition, cathodic electrical protection is required in order to guard the steel pipe against corrosion (Doc. 46, p. 9, citing Ex. F - Ackerman Aff., ¶ 4).  Ackerman continues, stating that a failure to continue such cathodic protection would evince abandonment of the pipeline (*Id*.).  Ackerman claims that the lack of cathodic maintenance of the Luxor Line pipeline is evidenced by: (1) the fact that the rectifiers were turned off for several years; (2) several sections of the pipeline had been exposed to the atmosphere, causing corrosion; (3) several sections of the pipeline had been removed, which interrupts the flow of cathodic protection; and (4) a lack of records indicating that the pipeline was receiving adequate cathodic protection (*Id*.).  Ackerman ultimately concludes that the Luxor Line pipeline "has not been maintained sufficiently to be capable of being used to transport any fluids, including water" (*Id*. at ¶ 5).

Further in support of their abandonment argument, Defendants state that the pipeline valves, necessary for the transportation of fluid within the pipeline, were allowed to go for some time without the required exercise and replacement of the unusable valves (Doc. 46, p. 10, citing Ex. C - Tim Anderson Dep., 33:5-13). Lastly, Defendants note that the pumps were removed from the pipeline and never replaced (*Id*., citing Ex. C, 35:7-16).  In sum, Defendants contend that these acts demonstrate an intent to abandon the pipeline, as the acts have served to destroy either the object for which the easement was established (the original 1939 Luxor Line pipeline) or the means of its enjoyment (i.e., the transportation of petroleum) (*Id*.).

In its Reply, Plaintiff opposes Defendants' notion of abandonment, first attacking the validity of the Ackerman affidavit (Doc. 54, pp. 1-2).  The Court finds the Ackerman affidavit inherently unreliable under the requirements of **FEDERAL RULE OF EVIDENCE 702**, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, ***if*** (1) ***the testimony is based upon sufficient facts or data***, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

**FED. R. EVID. 702 (emphasis added)**.  Although the Ackerman Affidavit states that his opinions were formed "[b]ased upon his review of the various documents, records and testimony, together with his professional knowledge and experience," the Court finds it problematic that the affidavit fails to identify the referenced "various documents, records and testimony" (Doc. 46, Ex. F - Ackerman Aff., ¶ 4).  As such, there is no way for the Court, as the trier of fact for purposes of this summary judgment motion, to determine whether Ackerman's opinions in his affidavit were actually based on sufficient facts or data.

Second, even assuming the referenced documents, records and testimony were identified and deemed to be "sufficient facts or data," the Court also finds evidence existing to contradict Ackerman's opinion regarding the maintenance of the pipeline as well as Defendants' ultimate assertion that the Hortenstine easements were abandoned.  As Defendants note, the Parties do not dispute the fact

that the Luxor Line pipeline has been inactive.  Thus, Defendants need only show

that a question of material fact exists regarding an intent to abandon the Hortenstine

easements.  Regarding the argument that there was no active cathodic protection

against corrosion of the pipeline, the deposition testimony of Marcus G. Garrison,[5]

attached as an exhibit to Defendants' Response, states that the cathodic protection

was actually turned back on when the Luxor Line pipeline was owned by Central

Illinois Pipeline Company, LLC ("CIPC") (Doc. 46, Ex. D - Garrison Dep., 62:11 -

67:10).  Plaintiff, as the current owner, likely sees no need to maintain cathodic

protection on the existing pipeline, as its plan is to replace the 10-inch diameter

pipeline with a new 36-inch diameter pipeline (Doc. 46, Ex. C - Tim Anderson Dep.,

39:12-15; 54:12 - 56:3).  Testimony also indicated that cathodic protection is

unnecessary if the pipeline is inactive or if it is only being used to transport water (*Id*.

at 55:20-24; 60:9-23).

> Ackerman's further observations regarding corrosion of the pipeline

stemming from turning off the rectifiers or by allowing certain sections of the pipeline

to either be exposed to the atmosphere or removed completely, are not supported by

specific evidence.  Further, they are again contradicted by evidence on the record.

It appears that when a pipeline is miles in length, such as the Luxor Line pipeline,

---

[5]  Garrison testified that he works for National Pipeline Reserve, and is in charge of pipeline acquisitions.  National Pipeline Reserve was formerly known as Mid-Continent Producer and Pipeline Services ("Mid-Continent") (Doc. 46, pp. 12-13, citing, Ex. D, 4:7 - 5:10).  Garrison further testified that Mid-Continent used to own CIPC before it merged into Plaintiff (*Id*. at 11:4-9).  CIPC was formed for the specific purpose of holding the interest to the Luxor Line pipeline easements (*Id*. at 6:4-19).

the need to replace missing or corroded sections is fairly common.  If the pipeline is inactive, these necessary repairs are then usually performed at the time the pipeline is to be brought back into active status.  As Garrison testified:

> A:   Of course, if any pipeline, whether it's active or inactive, there's always spots where you can't control corrosion.  There's always issues beyond anybody's control as to reason – there's always repairs done and you hear of leaks and such on active pipelines.
>
> Q:   And when those situations arise, for example on an idle pipeline, are they corrected at such time as the owner decides to bring it back into active service typically?
>
> A:   Yes.

(Doc. 46, Ex. D - Garrison Dep., 50:2-11).  Anderson also testified that it was very common during activation of a pipeline to replace missing sections (Doc. 46, Ex. C - Anderson Dep., 37:15-24).  Thus, Ackerman's unsubstantiated observations are not *per se* indicative of abandonment.  Rather, the fact that sections of a pipeline are missing or corroded seem to be the mere "nature of the beast" due to the pipeline's vast length.  This supposition, when coupled with additional evidence on the record as discussed *infra*, supports the notion that there was no intent to abandon.

The Court's finding that there was no abandonment consists of evidence also found within the Anderson and Garrison depositions, both transcripts having been attached as exhibits to Defendants' Response (Doc. 46, Exs. C & D).  Garrison also testified regarding the extensive hydrostatic testing conducted on the Luxor Line pipeline back in the early 1990's, which cost over $1.5 million to perform (Doc. 46, Ex. D - Garrison Dep., 45:1-19; 48:10-20).  During this testing, the Luxor Line

pipeline had water in it and was then pigged clean of the water (*Id*. at 36:19 - 37:18). In fact, it was this hydrostatic testing which helped to convince CIPC that the Luxor Line pipeline was still in good condition – and not abandoned – nearly ten years later when it purchased the easement rights from Magellan Pipeline Company (*Id*. at 45:1-19; 48:15-20).

It is also clear that proper signage indicating the presence of the pipeline was generally and continuously maintained above ground, along the Luxor Line pipeline (Doc. 46, Ex. D - Garrison Dep., 46:13-22; 50:15 - 51:2). Additionally, Plaintiff participates in the one-call notification system, which further evinces its intent to keep the Luxor Line pipeline free from damage caused by third party digging or other excavating.[6] Prior to the establishment of the state one-call notification system, the pipeline signage had a telephone number for third parties to call for inquires as to the exact underground location of the pipeline, so as not to come into contact with it when digging (*Id*. at 46:7-13; 50:15 - 51:20). Plaintiff also states that it maintains all road crossings that run over the easement areas, by keeping the areas clear of brush (Doc. 45, Ex. C - Anderson Dep., 33:17 - 34:10). As for the missing pipeline valves which Defendants have brought to the Court's

---

[6] In Illinois, the one-call notification system is operated by an entity called "JULIE, Inc.," which stands for "Joint Utility Locating Information for Excavators". It is a not-for-profit corporation that provides homeowners and professional excavators with one place to call for safe digging. JULIE serves as a message handling notification service for underground facility owners, taking information about planned excavations and distributing this information to its membership. It is then the responsibility of each facility owner to mark the location of their underground facilities at the excavation site. *See* Call Before You Dig, JULIE, Inc. - Illinois One-Call System, http://www.illinois1call.com (last visited July 30, 2010).

attention, witness testimony explained that when a pipeline is inactive, valves are unnecessary, as they serve no purpose (Doc. 46, Ex. C - Tim Anderson Dep., 73:15 - 74:1).

In sum, Plaintiff believes the current Luxor Line pipeline to be in good condition, despite its inactive status (*Id*. at 69:13 - 70:11). Whether this is true is not really even the crux of the matter, as the Court finds Defendants have failed to introduce any substantiated evidence creating a material question of fact regarding an intent to abandon the Luxor Line pipeline. Instead, the evidence leads the Court to find that there was no intent to abandon and thus, no abandonment of the Hortenstine easements. Certain maintenance was conducted periodically on the Luxor Line pipeline. Given that it is currently an inactive pipeline, it was thus unnecessary to perform the same maintenance tasks that an active pipeline may require. However, evidence supported Plaintiff's assertion that the pipeline could still be put into service for limited use, if needed. The fact that Plaintiff now plans to replace the existing pipeline with a newer pipeline lends credence to its explanation for why it has not conducted more extensive maintenance on the existing pipeline.

**D.    Expiration**

Defendants also seek to invalidate the Hortenstine easements on the basis of expiration (Doc. 46, pp. 11-13). Specifically, the Hortenstine easements state that each is to continue "so long as such pipe lines or other structures are maintained" (*see* Doc. 42, Ex. 1 - Henenberg Aff., Group Ex. A). Defendants assert

that either Plaintiff and/or its predecessors-in-interest failed to maintain the Luxor Line pipeline, thereby resulting in expiration of the easement rights.  Defendants first argue that the pipeline's ability to transport water is "irrelevant," as "water" is not listed in the original Grant of the Hortenstine easements (Doc. 46, p. 12; *see also* Ex. C - Anderson Dep., 36:22 - 37:2, where he opines that the Luxor Line pipeline could probably pass water run through one end of it, starting in Flanagan, and come out at the other end, in Patoka).  The Court regards this argument as unavailing, because the Hortenstine easements grant the easement holder "the right to lay, operate and maintain a pipe line for the transportation of oil, gas, gasoline ***and/or other fluids***" (Doc. 42, Ex. 1 - Henenberg Aff., Ex. A) (emphasis added).  The Court believes water qualifies as "other fluid," and thus, is within the scope of the grant of the Hortenstine easements.

Defendants further argue that the Luxor Line pipeline was not maintained due to the lack of working valves and pumps needed for transporting petroleum or other products down the line (Doc. 46, pp. 12-13).  However, the Court can make short work of this argument as well.  Again, looking at the language of the Hortenstine easements, the Court notes that the rights conveyed by each allow the easement holder "the right to lay, operate and maintain a pipe line," and "the right to lay, operate and maintain . . . a second pipe line," as well as "the right of ingress to and egress from such pipe line . . . to install and maintain such appliances or instrumentalities upon or near said pipe lines . . . and to replace or remove at will any part or all of said pipe lines and appurtenances" (Doc. 42, Ex. 1 - Henenberg Aff.,

Group Ex. A).  These are *rights*, but are not mandatory for the continued existence of the easement.  The requisite condition for the continued existence of the easement only requires maintenance of the pipe line.  What is not required, notably, is the *operation* of the pipe line.  Instead, this term is not included as part of the conditional grant.  Likely, the contracting parties contemplated a future scenario where the existing pipeline may not be in operational status, but would likely still require maintenance of a reasonable nature so as not to merely devolve into some sort of abandoned infrastructure artifact.  As the Court discussed in the "Abandonment" section *supra*, evidence shows that reasonable maintenance for an inactive pipeline was, in fact, conducted.  Further, case law involving other similarly situated easements have not found otherwise.  *See* Doc. 56; *see also* **Kelly, 2008 WL 2123755 at *1**.  Ultimately, there is no existing question of material fact regarding the issue of expiration to stave off summary judgment.[7]

---

[7] In the section of their Response regarding expiration, Defendants make an additional abandonment argument, asserting that Mid-Continent/CIPC's purchase of the easement rights for the Luxor Line pipeline supports their theory of abandonment, because Mid-Continent/CIPC is only in the business of acquiring pipelines; it does not produce natural gas or petroleum or otherwise intend to operate the pipeline (Doc. 46, pp. 12-13).  This is somewhat of an inane argument, since the evidence clearly showed CIPC acquires pipelines for the purpose of reselling the easement rights to companies that *do* operate pipelines (Doc. 46, Ex. D - Garrison Dep., 4-5).  Therefore, why would a business, whose entire purpose appears to be purchasing and reselling pipeline easement rights, purchase a pipeline in order to simply abandon it?  It would, to say the least, not be a very lucrative venture.

**E.     Other Issues**

Defendants, in the final section of his Response, pose several random questions labeled as "other issues" (Doc. 46, pp. 16-19).  The majority of these questions are broad, vague and do not specifically pertain to the Hortenstine easements.  Therefore, the Court sees no need to address these issues, as they are outside the scope of the issues to determine summary judgment herein.  The only "other issue" germane to this matter is Defendants' assertion that Plaintiff has failed to seek a summary determination of its current rights, if any, under the Hortenstine easements and therefore, only partial summary judgment has been sought, making further litigation necessary.  Regarding the rights Plaintiff has under the Hortenstine easements, the Court finds the rights are established by the language of the easement themselves.  There is no need for further analysis herein.

**V.  <u>Conclusion</u>**

Because the Court finds that an actual controversy between the Parties concerning the rights of the Hortenstine easements exists, declaratory relief is proper pursuant to **28 U.S.C. § 2201**.  Further, as discussed, the Court finds Plaintiff has properly established chain of title over the Hortenstine easements.  The Court additionally finds that the Hortenstine easements have neither been abandoned nor expired.  Therefore, Plaintiff's Motion for Summary Judgment (Doc. 41) is **GRANTED**.  Accordingly, the Court hereby **DECLARES** that the right-of-way grants ("the Hortenstine easements"), copies of which are attached to Plaintiff's Complaint

as Exhibit A (Case No. 08-cv-842, Doc. 2, Group Ex. A), are valid and enforceable according to their terms and thereby give Plaintiff the rights set forth therein.

**IT IS SO ORDERED**.

Signed this 3rd day of August, 2010.

/s/     David R Herndon

**Chief Judge**
**United States District Court**